**WO**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Athena Medical Group LLC, et al., | No. CV-25-02926-PHX-SMB |
| Appellants, | **ORDER** |
| v. | |
| Wound Care Specialists LLC, et al., | |
| Appellees. | |

This is an appeal from a bankruptcy proceeding involving: Athena Medical Group, LLC (the "Debtor") and their attorneys, Dorsey & Whitney LLP ("Dorsey") (collectively, the "Appellants"); and the Debtor's creditors, Wound Care Specialists, LLC and RENU LLC (collectively, "WCS" or the "Appellees").  The Appellants appeal the Under Advisement Decision Regarding Dorsey & Whitney LLP's Fee Application issued by the United States Bankruptcy Court for the District of Arizona which denied Dorsey's Application for Compensation and Reimbursement of Expenses (the "Application"). *In re Athena Med. Grp., LLC*, 672 B.R. 788 (Bankr. D. Ariz. 2025).

For the following reasons, the Court reverses the Bankruptcy Court's Decision and remands the case for further proceedings.  The Court accordingly denies as moot Appellees' Motion to Dismiss Debtor from Appeal.  (Doc. 14.)

## I.    BACKGROUND

On March 15, 2023, the Debtor filed for bankruptcy under Chapter 11, Subchapter

V of the Bankruptcy Code, 11 U.S.C. §§ 1181–1195.[1]  *Athena*, 672 B.R. at 790.  Initially, the Debtor was the "debtor in possession," meaning it remained in possession of its assets and in charge of its operations.  *See id.* at 790–791.  As such, the Debtor appointed Dorsey as counsel of record.  *Athena*, 672 B.R. at 791.

However, on June 28, 2023 (the "Disposition Date"), the Debtor was removed as a debtor-in-possession.  *Athena*, 672 B.R. at 791.  Nonetheless, the Debtor was still responsible for filing the bankruptcy plan.[2]  *Id.*  Dorsey continued to represent the Debtor and assisted in filing the plan which was eventually confirmed.  *Id.*

Thereafter, Dorsey filed the Application in which it requested over $1.3 million in fees and expenses for work performed after the Disposition Date.  *Id.*  WCS objected, "arguing that the attorney for a dispossessed debtor is not entitled to an award of attorney fees from the estate as a matter of law."  *Id.*  The Bankruptcy Court agreed and thus denied the Application.

## II.    LEGAL STANDARD

The Court reviews the Bankruptcy Court's conclusions of law and interpretation of the Bankruptcy Code de novo and reviews its factual findings for clear error.  *See In re Greene*, 583 F.3d 614, 618 (9th Cir. 2009).  "The legal standard used by a bankruptcy court to determine the allowance of fees involves statutory interpretation and construction of 11 U.S.C. § 330(a) and is therefore reviewed de novo."  *In re Mednet*, 251 B.R. 103, 106 (B.A.P. 9th Cir. 2000) (footnote omitted).  This appeal exclusively raises of question of law surrounding the application of the Bankruptcy Code and is thus reviewed de novo.

## III.    DISCUSSION

The Court begins with a brief survey of the relevant law.  As noted, the Debtor was a debtor in possession under § 1184.  That statute provides that "a debtor in possession

---

[1]  Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code.

[2]  "A bankruptcy plan details when and how the property of one or more bankruptcy estates will be distributed to the varied stakeholders.  Plans are among chapter 11's most flexible and powerful tools, which makes the proposal, negotiation, and confirmation of a plan focal points of many chapter 11 cases."  *In re Easterday Ranches, Inc.*, 647 B.R. 236, 249 (Bankr. E.D. Wash. 2022).

shall have all the rights, . . . and powers, and shall perform all functions and duties . . . of a trustee." § 1184.  Accordingly, the Debtor had the right to employ certain professionals under § 327.  That statute provides that "the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." § 327(a).  The Debtor initially hired Dorsey pursuant to § 327(a).

Section 327 professionals are compensated pursuant to § 330(a)(1).  That statute provides:

> After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to . . . a professional person employed under section 327 . . .
>
> (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person; and
>
> (B) reimbursement for actual, necessary expenses.

The Supreme Court has held "that § 330(a)(1) does not authorize compensation awards to debtors' attorneys from estate funds, unless they are employed as authorized by § 327." *See Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004).

Under certain circumstances, debtors in possession may be dispossessed.  § 1185(a).  Once a debtor is dispossessed, they are no longer a debtor in possession lose the associated rights, powers, and duties assigned to them through § 1184.  Accordingly, dispossessed debtors lose the right to hire professionals pursuant to § 327.

In a conventional Chapter 11 case, trustees, are sometimes obligated to "file a plan under section 1121." § 1106(a)(5).  Accordingly, Chapter 11 debtors in possession share a similar obligation pursuant to § 1107(a)—the Chapter 11 analog to § 1184(a).  Thus, in a Chapter 11 case, a dispossessed debtor loses its ability to file a plan as if it were the trustee.  The same is not true in a Subchapter V case.

In a Subchapter V case, "[o]nly the debtor may file a plan." § 1189(a).  This applies

regardless of whether the debtor is dispossessed. Accordingly, the Debtor was still obligated to file a plan after its dispossession. The Debtor thus kept Dorsey in its employ, even after dispossession, to assist it in carrying out its § 1189 obligation to file a plan. The parties dispute whether Dorsey is entitled to payment from the bankruptcy estate for these services.

Specifically, the issue on appeal is whether an attorney appointed by a debtor in possession under § 327(a) is entitled to payment under § 330(a) for services rendered after the debtor is dispossessed under § 1185. Appellants say yes, primarily relying on a Subchapter V dispossessed debtor's lingering § 1189 obligation. Appellants alternatively contend that Dorsey is entitled to payment under § 503(b)(1)(A).

Appellants offer three theories in support of their position: (1) "fees and costs are appropriate under § 330(a) because a subchapter V debtor retains the exclusive right to file a plan under § 1189(a) and therefore remains entitled to retain counsel under § 327(a)"; (2) "prior counsel to the debtor in possession" is still "a professional person under § 327(a)" and is thus entitled to § 330 fees; and (3) a professional is entitled to § 330 fees and costs if they "were actual and necessary costs and expenses of preserving the bankruptcy estate under § 503(b)(1)(A)." (Doc. 25 at 12–13.) The Court evaluates each theory in turn.

**A. Theory One**

Appellants first contend that "Dorsey's fees and costs are appropriate under § 330(a) because a subchapter V debtor retains the exclusive right to file a plan under § 1189(a) and therefore remains entitled to retain counsel under § 327(a)." (Doc. 25 at 12–13.) Appellants' theory is as follows. Under Subchapter V, only a debtor may file a plan—even if they are removed as a debtor in possession. (*Id.* at 16 (citing § 1189 and *In re ComedyMX, LLC*, 647 B.R. 457, 465 (Bankr. D. Del. 2022).) However, in a conventional Chapter 11 bankruptcy, the trustee files the plan if the debtor is dispossessed under §§ 1106 and 1121. (*Id.* (citing §§ 1104, 1106(a)(5), and 1121).) Appellants thus contend that even though §§ 1106 and 1121 do not apply in a Subchapter V case, "these provisions suggest

that the filing of a subchapter V plan—which under § 1189(a) is a right vested exclusively in the debtor—is a duty of a 'trustee.'" (*Id.*)  Accordingly, Subchapter V dispossessed debtors are left with "certain limited obligations of a trustee" and are thus "entitled to retain counsel under § 327(a)—who can then be compensated under § 330—to carry out that role." (*Id.*)  The Court disagrees.

Simply, dispossessed debtors may not retain professionals under § 327(a) after dispossession.  Section 327(a) is a power that, by its own terms, belongs to trustees. Debtors in possession are only given this power through assignment under § 1184. However, by its own terms, § 1184 only delegates a trustee's powers to debtors in possession.  Accordingly, § 1184 does not apply to dispossessed debtors who thereby lose their § 327(a) power.  Appellants do not cite to any language in the Code providing that dispossessed debtors retain certain trustee powers after dispossession.  Much less do Appellants cite to any express language providing that dispossessed debtors retain a § 327(a) power to carry out their § 1189 obligation to file a plan.  Appellants argue that such an exception is implicit within Subchapter V.  The Court disagrees.

Appellants contend that Subchapter V dispossessed debtors retain a § 327 power because their § 1189 duty to file a plan is a "trustee duty," such that debtors retain the § 327 power for the limited purpose of hiring those professionals.  Even accepting that filing a plan is generally a trustee's duty, filing a plan is not a trustee's duty in a Subchapter V case. As noted, trustees have a duty to file a plan in Chapter 11 cases pursuant to §§ 1106(a)(5) and 1121.  However, Subchapter V provides that these provisions "do not apply in a case under this subchapter." § 1181(a).  Subchapter V, through § 1189, separately provides that debtors have a duty to file a plan.  Accordingly, even if trustees generally have a duty to file the plan under §§ 1106 and 1121, Subchapter V expressly makes those provisions inapplicable.  § 1181.  Subchapter V then separately obligates debtors to file a plan. § 1189.  In this way, § 1189 makes filing the plan a Debtor's duty; it does not extend a trustee's duty to file a plan to the Debtor.  The Court thus agrees with the Bankruptcy Court's point that "it is illogical to argue that a debtor continues to retain the rights of the

trustee to file a plan, when the debtor's right never emanated from the trustee's rights in the first place." *Athena*, 672 B.R. at 797.

The foregoing aside, the Court also disagrees with Appellants' characterization of filing a plan in a Chapter 11 case as a "trustee duty." Appellants are correct in a certain sense because § 1106(a)(5) provides that "[a] trustee shall . . . as soon as practicable, file a plan under section 1121." However, that statute goes on to say that a trustee may alternatively "file a report of why the trustee will not file a plan." § 1106(a)(5). Additionally, § 1121 provides that debtors may also file a plan, and in fact, provides that "*only the debtor may file a plan* until after 120 days after the date of the order for relief." § 1121(a), (b) (emphasis added). Thus, it is not as if filing a plan is invariably a trustee's duty under Chapter 11; debtors may file such plans and trustees may choose not to file such plans in certain instances.

Accordingly, the Court rejects Appellants' first theory and affirms the Bankruptcy Court's treatment of this issue.

**B. Theory Two**

Appellants next contend that "Dorsey's fees are appropriate under § 330(a) because, as prior counsel to the debtor in possession, Dorsey is a professional person under § 327(a)." (Doc. 25 at 13.) Appellants argue that "the Debtor still needed counsel to assist with its exclusive duty to file a plan, and Dorsey rendered legal services to the Debtor in connection with its exclusive duty to file a plan under § 1189(a)." (*Id.* at 17.) Accordingly, after the Debtor was dispossessed, "Dorsey was still counsel to the Debtor, and could still be considered a 'professional' employed under § 327(a)." (*Id.*) Appellants do not rely on any discrete language within Subchapter V or Chapter 11 for this proposition. Thus, it appears Appellants believe its theory is implicit within Subchapter V. The Court disagrees.

This Court is guided by the Supreme Court's decision in *Lamie*. There, the Supreme Court found that only attorneys employed under § 327 are entitled to § 330 compensation. *Lamie*, 540 U.S. at 538–539. There, an attorney represented a Chapter 11 debtor in possession. 540 U.S. at 531–32. The debtor was then dispossessed "and so terminated

petitioner's service under § 327 as an attorney for the debtor-in-possession." *Id*. at 532. The attorney continued to provide legal services to the debtor and sought compensation for those post-dispossession services. *Id.*  The Court affirmed that the attorney was not entitled to such compensation because he ceased to be a § 327 attorney upon the debtor's dispossession. *Id.* at 542.

Plainly applied, *Lamie* suggests that Dorsey is not entitled to § 330 compensation because it ceased to be a "professional person employed under section 327" upon the Debtor's dispossession. *See* § 330.  Indeed, subsequent courts have made similar findings. *See, e.g.*, *In re NIR W. Coast, Inc.*, 638 B.R. 441, 453 (Bankr. E.D. Cal. 2022) (applying *Lamie* in a Subchapter V case and finding that "[t]ermination of the Debtor's status as the debtor in possession on April 1, 2021, terminated the Debtor's retention of the Law Firm under § 327(a) as the estate's attorneys and the ability to compensate and reimburse the Law Firm from the estate under § 330."); *In re Johnson*, 397 B.R. 486, 490 (Bankr. E.D. Cal. 2008) ("Although *Lamie* involved the different situation of a case that was converted from chapter 11 to chapter 7, the fact that its underlying rationale turned on cessation of status as debtor in possession indicates that there is no reason to doubt that *Lamie* applies equally to chapter 11 cases in which a trustee is appointed.").

Nonetheless, Appellants contend that *Lamie*, *NIR*, and *Johnson* do not control here. (Doc. 25 at 18.)  They argue that these cases did not "consider[] the impact of § 1189(a) and how the debtor's duty to file a plan means the debtor needs counsel to accomplish this duty." (*Id.*)  Appellants also note that *Lamie* was decided before Subchapter V's enactment and otherwise involved Chapter 7. (*Id.*)  While Appellants' observations are correct, they are of no moment.

There is no indication that § 1189 somehow overcomes *Lamie*'s conclusion "that § 330(a)(1) does not authorize compensation awards to debtors' attorneys from estate funds, unless they are employed as authorized by § 327." 540 U.S. at 538.  Again, under § 330, Dorsey must be "a professional person employed under section 327" to be entitled to § 330 payment.  Dorsey was not employed in such a capacity upon the Debtor's

dispossession. A § 327 professional is one who "represent[s] or assist[s] the trustee in carrying out the trustee's duties." § 327(a). Dorsey could not fit this description because it was assisting the Debtor—which by nature of its dispossession—lost the rights and powers of a trustee upon dispossession. § 1184. Accordingly, Dorsey could not be assisting the Debtor in carrying out trustee duties. And as made clear, the § 1189 duty is not a trustee duty.

Appellants' theory also does not otherwise find support to Subchapter V's text. Section 1189 does not mention § 327 or include any text remotely suggesting that professionals hired by a debtor to assist in filing a plan are otherwise entitled to § 330 payment. This omission is significant. "[T]he best evidence of Congress's intent is the statutory text." *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 544 (2012). Accordingly, the absence of any text suggesting that debtors may utilize § 327 in carrying out its § 1189 duty is significant.

However, as Appellants note, § 1189 was enacted after *Lamie*. This too is significant. Courts assume that "when Congress enacts statutes, it is aware of [the Supreme Court's] relevant precedents." *Bartenwerfer v. Buckley*, 598 U.S. 69, 80(2023). Accordingly, the Court assumes that Congress was aware of *Lamie* when it enacted Subchapter V. However, Congress did not include any language in Subchapter V attempting to curb *Lamie*'s holding.

Ultimately, Appellants argue that § 1189 creates an implicit scheme, under which, attorneys hired by dispossessed debtors are entitled to § 330 payment for services rendered after dispossession. However, this purported scheme is not rooted in the Bankruptcy Code's text and facially conflicts with §§ 327 and 330 and *Lamie*. Accordingly, the Court rejects Appellants' second theory and affirms the Bankruptcy Court's treatment of this issue.

### C. Theory Three

Finally, Appellants contend that "Dorsey's fees and costs were actual and necessary costs and expenses of preserving the bankruptcy estate under § 503(b)(1)(A)." (Doc. 25

at 12.)   That statute provides: "After notice and a hearing, there shall be allowed administrative expenses including the actual, necessary costs and expenses of preserving the estate."  § 503(b)(1)(A) (citation modified).  Section 503(b)(1)(A) is one of the listed "administrative expenses."  *See generally* § 503(b)(1)–(9).  As relevant here, other allowed administrative expenses include "compensation and reimbursement awarded under section 330(a)."  § 503(b)(2).

The Bankruptcy Court rejected Appellant's third theory based on the interplay between § 503(b)(1)(A) and § 503(b)(2).  *Athena*, 672 B.R. at 800.  The Bankruptcy Court found that "that allowing the fees under § 503(b)(1) would improperly circumvent more specific provisions of the Code that do not allow for such fees."  *Id.* at 801–02.  Indeed, courts generally find that a professional cannot use § 503(b)(1)(A) to circumvent their inability to claim compensation under § 530(b)(2).  *Id.* (citing cases).  For example, the Seventh Circuit noted:

> [I]t would vitiate the limitations of § 327 if a bankruptcy court could deny an application under that section and order the estate to pay for the legal services anyway.  Moreover, the structure of § 503(b) strongly implies that professionals eligible for compensation must receive it under § 503(b)(2)—which depends on authorization under § 330 or § 1103(a) (and thus on approval under § 327).  One might as well erase § 503(b)(2) from the statute if attorneys may stake their claims under § 503(b)(1)(A) even when ineligible under §§ 327, 330, and 503(b)(2).

*In re Milwaukee Engraving Co., Inc.*, 219 F.3d 635, 637 (7th Cir. 2000).  The Ninth Circuit's Bankruptcy Appellate Panel likewise found that: "It is reasonable then, to construe Section 503(b)(2), with its specific reference to compensation to professionals under Section 330, as the only part of Section 503(b) under which such professionals can receive compensation."  *In re Weibel, Inc.*, 176 B.R. 209, 213 (B.A.P. 9th Cir. 1994).  A similar sentiment was expressed by the Third Circuit.  *See F/S Airlease II, Inc. v. Simon*, 844 F.2d 99, 109 (3d Cir. 1988) ("If [a professional] were able to be compensated under section 503(b)(1)(A), it would render section 327(a) nugatory.").

The foregoing authority is well taken; however, the Court finds that it is inapplicable in Subchapter V cases when a professional is hired to assist a debtor in filing a plan under

- 9 -

§ 1189.  Such a professional seeking payment under § 503(b)(1)(A) would not be circumventing §§ 327, 330 and § 503(b)(2) because those statutes are inapplicable in the first instance.

To start, the foregoing cases each involved a professional hired by a debtor in possession to carry out trustee duties—a situation that falls squarely within § 327(a).  For example, in *Airlease,* the court found that "because [the professional] was hired to assist the debtor-in-possession in carrying out the debtor-in-possession's duties, and he failed to comply with that section's requirement to obtain prior approval of his appointment, he cannot rely on section 503(b)(1)(A) as a way of circumventing section 327(a)."  844 F.2d 108–09 (citation modified).  Similarly, in *Milwaukee* and *Weibel*, debtors in possession hired professionals to assist them in carrying out their trustee derived duties.  *See Milwaukee*, 219 F.3d 635, 636; *Weibel*, 176 B.R. at 210.  In both cases, the professionals were found to be ineligible for § 327 employment because they were not "disinterested persons" under the statute.  *See Milwaukee*, 219 F.3d at 636; *Weibel*, 176 B.R. at 210.  Again, the critical similarity between these cases is that it involved a professional hired by a debtor in possession to assist the debtor in possession in carrying out its trustee derived duties.

Here, however, § 327(a) did not apply when the Debtor was dispossessed.  Indeed, it would be factually impossible for Dorsey to assist the Debtor in carrying out trustee duties because the Debtor was stripped of these duties.  *See* § 1185.  Indeed, Dorsey assisted the Debtor in filing a plan under § 1189 which is not a trustee duty.  Thus, unlike the professionals in *Airlease*, *Milwaukee*, and *Weibel*, Dorsey was not assisting a debtor in possession, thus § 327 did not apply.

In this way, when the professionals in *Airlease*, *Milwaukee*, and *Weibel* sought payment under § 503(b)(1)(A), such professionals were attempting to circumvent §§ 327, 330, and 503(b)(2) because those statutes specifically govern compensation for professionals assisting in carrying out trustee duties.  Moreover, an actual determination was made in those cases that the professionals were not entitled to employment under § 327

because the professionals failed to abide by § 327(a)'s requirements.

However, Dorsey would not be circumventing § 503(b)(2) because it could not avail itself of that statute in the first instance as made clear in the discussions regarding theories one and two. As discussed, §§ 327, 330, and 503(b)(2) simply do not govern Dorsey's employment or potential compensation. The Debtor had no ability to hire Dorsey under § 327(a), and Dorsey was not otherwise assisting in carrying out a trustee duty.

The Court recognizes that Dorsey unsuccessfully sought compensation under §§ 327 and 330. However, Dorsey is not making an end run around those statutes by alternatively seeking compensation under § 503(b)(1)(A). Unlike the professionals in *Airlease*, *Milwaukee*, and *Weibel*, Dorsey was not entitled to compensation under § 330 in the first instance. In this way, the determination that Dorsey was not entitled to § 330 payment is substantively different than the determination made in *Airlease*, *Milwaukee*, and *Weibel*. Again, in the latter cases, the professionals performed work covered by § 327—Dorsey did not. Similarly, the professionals in those cases performed work for a debtor in possession—Dorsey did not.

Also, Dorsey is not exposing a loophole in the Code. Under § 330(a), a professional is entitled to compensation and reimbursement for "actual" and "necessary" services and expenses "[a]fter notice to the parties in interest and the United States Trustee and a hearing." Section 503(b)(1)(A) employs a materially similar standard. Under § 503(b)(1)(A), payment can be made for "the actual, necessary costs and expenses of preserving the estate" and there must also be "notice and a hearing." Dorsey is thus not eliding a more onerous § 330(a) standard in seeking payment under § 503(b)(1)(A). The Court notes that the § 503(b)(1)(A) standard thus fortifies a bankruptcy estate against frivolous claims for compensation filed by professionals retained by dispossessed debtors. Of course, not every service rendered by such professionals will be an "actual, necessary costs and expenses of preserving the estate." *See* § 503(b)(1)(A). However, Dorsey stands to make a decent argument that its claim meets the § 503(b)(1)(A) standard because it assisted the Debtor in fulfilling its obligation to file a bankruptcy plan—a critical facet of

a bankruptcy proceeding.

The Court also notes that § 503(b)(1)(A) expressly tolerates such an interpretation. Section 503(b)(1)(A)(i) provides that "there shall be allowed administrative expenses . . . including wages, salaries, and commissions for services rendered after the commencement of the case." As such, § 503(b)(1)(A)(i) envisions that providers may be paid for services that do not fall under §§ 327, 330, and 503(b)(2). Because § 503(b)(1)(A)(i) and § 503(b)(2) are listed as separate administrative expenses, they must cover different circumstances. In this way, the previous authorities are not disturbed because they concern circumstances governed by § 503(b)(2); namely, when a professional assists in carrying out trustee duties. On the other hand, § 503(b)(1)(A)(i) concerns those circumstances not governed by § 503(b)(2), such as this case.

The Court also recognizes "that the validity of a claim is generally a function of underlying substantive law" and that "courts are not authorized in the name of equity to make wholesale substitution of underlying law . . . but are limited to what the Bankruptcy Code itself provides." *Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 24–25 (2000). This Court's decision abides by the Code. But to the extent equities are of any tangential concern, the Court separately notes that the equities favor Dorsey. As the Bankruptcy Court noted, "the work performed by Dorsey in proposing and prosecuting the plan unquestionably resulted in a successful confirmation." *Athena*, 672 B.R. at 799–800. These were not mere auxiliary services—"the proposal, negotiation, and confirmation of a plan [is the] focal point[] of many chapter 11 cases." *Easterday*, 647 B.R. at 249.

Accordingly, the Court finds that Dorsey is not legally barred from receiving compensation pursuant to § 503(b)(1)(A).

**IV.    CONCLUSION**

**IT IS ORDERED** that the July 29, 2025 Under Advisement Decision Regarding Dorsey & Whitney LLP's Fee Application of the Bankruptcy Court is **reversed**. This matter is remanded to the Bankruptcy Court for further proceedings consistent with this Order.

**IT IS FURTHER ORDERED denying as moot** Appellees' Motion to Dismiss Debtor from Appeal. (Doc. 14.)

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly and terminate this case.

Dated this 13th day of July, 2026.

_____
Honorable Susan M. Brnovich
United States District Judge

- 13 -